UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT NAPPER,

        Plaintiff,                    CIVIL ACTION NO. 05 CV 71794 DT

     v.                                DISTRICT JUDGE LAWRENCE P. ZATKOFF

JO ANNE B. BARNHART,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security Disability case comes before the court on the parties' cross-motions motion for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion be granted and that plaintiff's motion be denied.

### II. Background

Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) on August, 19, 2002, claiming that he was disabled due traumatic arthritis of the lumbar spine, post-traumatic stress disorder (hereinafter "PTSD"), edema in both legs, right knee dislocation, sleep

apnea, stomach ulcers, and anemia, with a disability onset date of May 25, 2001.[1]  (Tr. 69-73, 86)  Plaintiff was 34 years of age when he filed the application.  The Social Security Administration (SSA) denied the claim on November 6, 2002.  (Tr. 27-31)  Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 35)  The hearing was held on October 26, 2004 before ALJ Douglas A. Walker.  (Tr. 298-335)  On November 23, 2004, the ALJ issued a decision denying plaintiff's claim.  (Tr. 10-25)  The ALJ determined that plaintiff had edema in both legs, knee problems, lower back pain with osteoarthritis and status post laminectomy at L4-5, sleep apnea, obesity, PTSD with dysthymia, and depression with panic attacks.  (Tr.  24)  The ALJ further determined that plaintiff's impairment were "severe" within the meaning of 20 C.F.R. § 404.1520, but that he did not have an impairment or combination of impairments that met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security Regulations.  Id.  Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff retained the capacity to perform a limited range of sedentary work notwithstanding his impairments.  (Tr. 25)  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.  Id.

Following the ALJ's denial of his application, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 8-9)  The Appeals Council denied the request on March 2, 2005.  (Tr. 4-7)  The ALJ's decision thus became the final decision of the Commissioner.  On May 6, 2005, plaintiff filed suit for review of the Commissioner's decision

---

[1] Plaintiff filed a prior application for DIB.  The claim was denied by an ALJ on May 24, 2001.

pursuant to 42 U.S.C. § 405(g).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff contends in his motion that the ALJ erred in failing to find that one or more of his impairments met an applicable section of the Listing of Impairments, that the ALJ erred in finding that his allegations regarding the severity of his impairments were not fully credible, and that the ALJ erred in concluding that he retained the capacity to perform a significant range of sedentary work.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment.  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance

and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### IV. Analysis

#### A. Medical Listings

Plaintiff states in his brief that his back, knee, and mental impairments "approached" the requirements of the applicable sections of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and that he is therefore disabled. Plaintiff's argument is flawed on its face. A condition that "approaches" a Listing does not meet or equal the Listing, as required by the regulations. See 20 C.F.R. § 404.1520(a)(4)(iii)("If you have an impairment that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled"). In order to establish disability under the Listings, each requirement of the applicable Listing must be met. See 20 C.F.R. § 404.1525(d)("We will not consider your impairment to be one listed in appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing of that impairment"); see also Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885 (1990)("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria"). If any one requirement is not satisfied, the ALJ must move beyond the Listings and determine whether the claimant can perform either his past work or other work based upon the claimant's age,

vocational profile, and residual functional capacity (RFC).  See 20 C.F.R. § 404.1520(a)(4)(iv), (v); see also Foster, supra, 279 F.3d at 354.

To the extent plaintiff argues that one or more of his impairments met or equaled a listed impairment, the record supports the ALJ's findings to the contrary.  Turning first to plaintiff's back impairment, § 1.04 of the Listings provides as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

There is some evidence in the record indicating that plaintiff suffers from degenerative disc disease, which is a listed spine disorder under § 1.04. (Tr. 131, 135). However, there is no evidence showing that the condition results in "compromise of a nerve root...or the spinal cord," as required under § 1.04. Further there is no evidence in the record indicating that plaintiff's back impairment meets any of the medical criteria set forth in subsections A, B, or C of § 1.04. Accordingly, the ALJ did not err in concluding that plaintiff's back impairment did not meet or equal § 1.04 of the Listings.

Plaintiff also claims to have a disabling knee impairment. Section 1.02 of the Listings, which covers joint dysfunctions, provides, in part, as follows:

> 1.02 *Major Dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylsosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

An "inability to ambulate effectively" is defined in § 1.00B2b as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

An MRI taken of plaintiff's right knee on August 16, 2000 showed "slight lateral subluxation of the patella" in an extended position, which the doctor noted "does not necessarily indicate abnormal patellar tracking."  (Tr. 169)  There is otherwise no evidence in the record suggestive of a "gross anatomical deformity," as required by § 1.02 of the Listings.  It is questionable whether a subluxation characterized as "slight" constitutes a "gross anatomical deformity" within the meaning of the Listing.  However, even if it does, plaintiff has failed to cite any evidence in the record showing "joint space narrowing, bony destruction, or ankylsosis of the affected joint," and he has also failed to demonstrate "an inability to ambulate effectively."  Regarding the latter, there is no indication in the record that plaintiff uses an assistive device that "limits the functioning of both upper extremities."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.  Plaintiff testified that he used a cane, but only "occasionally," and that he didn't bring his cane to the hearing because he had parked close to the hearing room.  (Tr. 324)  Further, in a report dated October 1, 2002, Dr. S. Cohen, who examined plaintiff at the request of the State of Michigan Disability Determination Service (DDS), noted that plaintiff's gait was "slow, but steady without walking aid."  (Tr. 143)  On September 2, 2002, plaintiff's gait was found to be "intact."  (Tr. 129)  In a report dated September 28, 2004, it is noted that plaintiff was "ambulating without difficulty[.]"  (Tr. 206)  Further, it was noted in a report dated October 14, 2004, that plaintiff was not using any ambulatory aids.  (Tr. 200)  Thus, there is ample evidence in the record indicating that plaintiff can ambulate independently without the aid of assistive device.  In sum, even if plaintiff 's knee impairment is "characterized by a gross

anatomical deformity," the evidence in the record is insufficient to establish that the impairment meets the remaining criteria of § 1.02 of the Listings.

The record also establishes, as the ALJ found, that plaintiff suffers from PTSD with dysthymia and depression with panic attacks. The applicable sections of the Listings are § 12.04 and § 12.06, which address, respectively, affective disorders (depression) and anxiety. Under both sections of the Listing, the claimant must demonstrate, among other things, that he has experienced "repeated episodes of decompensation, each of extended duration." Based on findings set forth in a Psychiatric Review Technique prepared by a DDS psychologist, the ALJ determined that plaintiff had experienced no episodes of deterioration or decompensation. (Tr. 20) Plaintiff has failed to cite any contrary evidence in the record demonstrating that he has suffered repeated episodes of decompensation. In addition, the psychologist concluded that plaintiff's mental impairments did not meet or equal any Listing. (Tr. 151) The record thus supports the ALJ's determination that plaintiff's mental impairments did not meet the requirements of the Listings.

Plaintiff does not contend that any of his other impairments meet or equal a listed impairment. Accordingly, for the reasons stated above, the court finds that there is substantial evidence in the record to support the ALJ's determination that plaintiff's impairments, while severe, did not meet the requirements of the applicable sections of the Listings.

**B.  Plaintiff's Credibility**

The ALJ concluded that plaintiff's "allegations regarding his limitations are not totally credible[.]"  (Tr. 24)  The ALJ cited the following reasons as a basis for partially discrediting plaintiff's allegations:

> Further, the undersigned fails to find that the claimant's complaints regarding pain, inability to sleep secondary to sleep apnea with resultant napping, and drowsiness secondary to medications are credible such that they would preclude all employment.  The record fails to establish pain treatment, either directly, or through medications, which is consistent with finding this claimant incapable of performing competitive, remunerative employment. Further, the claimant drives, shops, and watches TV for several hours per day.  The claimant may alleviate his discomforts within the residual functional capacity findings as set forth above, and the items that cause an increase in symptomatology have been taken into consideration in making the residual functional capacity findings.

Plaintiff claims that the ALJ erred in finding that his allegations regarding his impairments were less than fully credible.

The court notes that the sum total of plaintiff's argument on this issue is the following: "[Plaintiff] disagrees with Finding 5 that he was not totally credible.  All of the relevant medical evidence supports him."  (Plaintiff's Brief, at p. 19)  As the Sixth Circuit noted in McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997)(quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n, 59 F.3d 284, 293-94 (1st Cir. 1995)), "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to...put flesh on its bones."  Plaintiff made no effort in his brief to

develop this argument, cited no law, and cited no evidence in the record to support his position. Given the conclusory manner in which plaintiff objected to the ALJ's credibility determination, the court recommends that the district court deem the issue waived.

In the alternative, the court finds no basis in the record to disturb the ALJ's credibility determination, which is entitled to significant deference.  See Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997)("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility").  The ALJ largely credited plaintiff's allegations and testimony, as evidenced by the significant limitations the ALJ included in his determination of plaintiff's residual functional capacity (RFC), which is discussed further below.  To the extent the ALJ discounted plaintiff's credibility, the record supports his determination.  While the objective medical evidence in the record substantiates that plaintiff suffers from various physical and mental impairments, it is does not substantiate plaintiff's allegations as to the extent and severity of those conditions.  MRIs and X-rays of plaintiff's spine have shown only minimal degenerative changes, disc bulging, and disc space narrowing, and have shown no other significant spinal abnormalities.  (Tr. 131, 135, 142, 168)  There is no evidence in the record of any spasms, muscle atrophy, or sensory deficits associated with plaintiff's back impairment, and plaintiff has exhibited a largely normal range of motion of the dorsolumbar spine.  (Tr. 131, 135, 142, 145, 168); see also Jones v. Secretary of Health and Human Services, 945 F.2d, 1365, 1369-70 (6th Cir. 1991)(severe pain typically associated with muscle atrophy, muscle spasm, reduced joint motion, and sensory and motor disruption).

Similarly, the objective medical evidence in the record does not substantiate plaintiff's allegations as to the severity of his knee impairment. A MRI taken of plaintiff's right knee on August 16, 2000 showed "slight" lateral subluxation of the patella, but otherwise revealed no abnormalities, and there is no evidence in the record of a left knee impairment, though plaintiff testified that he suffered from bi-lateral knee pain. Further, there is no evidence in the record that plaintiff has sought any treatment for his knees. See Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990)(Failure to seek treatment undercuts complaints of disabling pain). In addition, while plaintiff's daily activities are certainly limited by his impairments, the evidence in the record as to those activities is not wholly consistent with plaintiff's assertion of total disability. The record reflects that plaintiff shops for himself, that he is capable of taking care of his basis needs and is otherwise independent in his activities of daily living, that he drives, and that he watches his young nephew (5 years of age at the time of the hearing) on occasion.

In light of the foregoing, and giving the ALJ's credibility determination the deference it is due, the court finds that to the extent the ALJ discredited plaintiff's allegations and testimony regarding his pain and limitations, there is substantial evidence in the record to support the ALJ's determination.

### C.  Residual Functional Capacity

Plaintiff also asserts that the ALJ erred in concluding that he had the RFC to perform sedentary work. As with plaintiff's argument regarding the ALJ's credibility determination, plaintiff did not make any effort to develop this argument in his brief. Accordingly, the district

court would be well within its discretion in deeming the argument waived. McPherson, supra, 125 F.3d at 995-996.

Turning to the merits of the claim, the ALJ's RFC determination, which formed the basis of his disability determination, was as follows:

> He requires work which is low stress, simple, unskilled, with one, two, or three step instructions, not in close proximity to coworker [sic] (meaning that the individual could not function as a member of a team), and not in direct contact with the public; he can lift and/or carry a maximum 10 pounds[;] he requires a sit/stand option while remaining at the workstation (this option means that the individual could sit/stand at will while performing his assigned duties); he can stand and/or walk (with normal breaks) for a total of 2 hours in an 8-hour workday; he can sit (with normal breaks) for a total of 6 hours in an 8-hour workday; he should avoid frequent ascending and descending of stairs; he can perform pushing and pulling motions with the upper, but not lower extremities within the aforementioned weight restrictions; he can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching; he can perform each of the following postural activities occasionally: balancing, stooping, crouching, kneeling, and crawling, but not climbing; he is in mild to moderate pain and experiences drowsiness from his medications and as a result is limited to work that does not require exposure to hazards in the workplace such as unprotected areas of moving machinery; heights; ramps; ladders; scaffolding; and on the ground level unprotected regions of holes and pits; or operating motor vehicles; he has a mental disorder(s), namely depression with post traumatic stress disorder with secondary panic attacks, which affects his ability to concentrate upon complex or detailed tasks, but he would remain capable of understanding, remembering, and carrying out simple job instructions; and he should be allowed to elevate his legs at will.

(Tr. 22) The ALJ incorporated this RFC determination in a series of hypothetical questions he posed to the VE. In response to the hypotheticals, the VE testified that a person of plaintiff's age and vocational profile, with the RFC indicated above, was capable of working as a surveillance

system monitor, an inspector, an assembler, and a packer, and that there were, collectively, 5,000 such jobs in the Detroit metropolitan area.  (Tr.  326-335)

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled.  Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).  Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding.

The ALJ, in both his RFC determination and the hypothetical questions he posed to the VE, reasonably accommodated plaintiff's physical and mental impairments.  The ALJ included significant lifting and postural restrictions designed to accommodate plaintiff's knee and back impairments, as well as the requirement that plaintiff be able to elevate his feet at will.  There are no medical reports in the record indicating that greater restrictions than those used by the ALJ were necessary to accommodate plaintiff's impairments, and there are no medical opinions in the record that plaintiff's physical impairments were so severe as to preclude the performance of all work-related activity.  As to the latter point, David Bialy, a physicians' assistant at the Department of Veterans Affairs Medical Center, Ann Arbor, Michigan, stated in an April 23, 2003 letter that "[d]ue to his current medical conditions, we feel Mr. Napper is unemployable."  The ALJ acknowledged Mr. Bialy's opinion, but concluded that he was not bound by it, noting that Mr. Bialy was not a physician and that his opinion was not supported by objective medical findings.  (Tr. 17)  The "treating physician" rule, as explained in 20 C.F.R. § 404.1527(d)(2),

applies only to "statements from physicians and psychologists or other acceptable medical sources."[2]  A physicians' assistant is not among the "other acceptable medical sources" listed in 20 C.F.R. § 404.1513(a)(1).[3]  Thus, even if Mr. Bialy's opinion was well-supported and consistent with other evidence in the record, the ALJ would not have been required to give it any particular weight.  See, e.g., Alosa v. Secretary of Health and Human Services, 1994 WL 259775 at *8 (D.N.H. 1994)(ALJ was free to give little or no weight to opinion of physicians' assistant that claimant was "significantly disabled").  Further, Mr. Bialy did not cite in the letter any X-rays, MRIs or other diagnostic testing as a basis for his opinion.  Thus, his opinion lacks objective medical support.  See 20 C.F.R. §404.1527(d)(3)("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion").  The court also notes that under 20 C.F.R. §

---

[2]The "treating physician" rule provides as follows:
>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight.  When we doe not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).

[3]The findings and opinions of a physicians' assistant may be considered as "other source" evidence pursuant to 20 C.F.R. § 404.1513(d).  However, such evidence is not subject to the "treating physician" rule.  Further, the ALJ considered Mr. Bialy's statements regarding plaintiff's limitations and accorded some weight to them, rejecting only Mr. Bialy's statement that plaintiff was "unemployable."  (Tr. 17-18)  The ALJ thus gave proper consideration to Mr. Bialy's opinion.

404.1527(e)(1), the question of whether a claimant is disabled is reserved to the ALJ, and an opinion that a claimant is "disabled," even if provided by a treating source, is not binding upon the ALJ. Id. ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). Accordingly, the ALJ did not err in declining to give any weight to Mr. Bialy's statement that plaintiff is "unemployable."

Further, the ALJ included significant limitations designed to accommodate plaintiff's mental impairments. The ALJ's findings in this regard are consistent with the findings of the DDS consulting psychologist, and there are no reports or opinions in the record indicating that greater restrictions were warranted or that plaintiff's mental impairments were so severe as to preclude the performance of all work activities.[4] In sum, the court finds that the ALJ's RFC determination and the hypotheticals he posed to the ALJ accurately incorporated plaintiff's physical and mental impairments and, therefore, that the VE's testimony constitutes substantial evidence to support the ALJ's determination than plaintiff is not disabled. Varley, supra, 820 F.2d at 779.

**V. Conclusion**

For the reasons set forth above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's cross-motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

---

[4]The DDS consultant concluded that plaintiff was mildly limited in the area of activities of daily living, mildly limited in the area of maintaining social functioning, moderately limited in the area of maintaining concentration, persistence, or pace, and that he had experienced no episodes of decompensation. (Tr. 161). The consultant also concluded that plaintiff was capable of performing simple, unskilled tasks. (Tr. 149).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

        s/Virginia M. Morgan
        VIRGINIA M. MORGAN
Dated: October 5, 2005        UNITED STATES MAGISTRATE JUDGE

### Proof of Service

Copies sent this date to the attorneys of record and the Social Security Administration by U. S. Mail and/or electronic means